UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT KNOUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil No. 19-11973-LTS |
| | ) |
| BROADRIDGE FINANCIAL | ) |
| SOLUTIONS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

ORDER ON MOTIONS FOR SUMMARY JUDGMENT (DOC. NOS. 19, 22)

May 27, 2020

SOROKIN, J.

Plaintiff Scott Knous was an at-will employee of Defendant Broadridge Financial

Solutions, Inc. until Broadridge terminated Knous's employment.  Knous filed suit under M.G.L.

ch. 149, § 148 alleging, in two causes of action, that Broadridge failed to pay him on the day of

his discharge the wages (Count I) and earned vacation time (Count II) due and owing to him on

that date.  Doc. No. 1-2.[1]  Both parties now move for summary judgment.  Doc. Nos. 19, 22.  The

motions are fully briefed and the Court heard argument on May 21, 2020.  The Court has carefully

reviewed the parties' submissions and arguments, applying the familiar summary judgment

standard, drawing all reasonable inferences in favor of and resolving disputes of genuine material

fact in favor of the non-moving party.  For the reasons that follow, the Court DENIES Knous's

motion for summary judgment (Doc. No. 19) and ALLOWS Broadridge's motion (Doc. No. 22).

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing
system; pincites are to the page numbers in the ECF header.

I.     BACKGROUND[2]

Knous worked for Broadridge in its Broadridge Investment Management Solutions ("BIMS") group. Doc. No. 28 ¶¶ 1, 34. He earned a monthly salary of $20,833.33. Id. ¶ 2. He also accrued vacation time each month. Id. In early 2019, Broadridge decided to restructure the BIMS group, with the result that certain positions would be eliminated, and certain employees terminated. Id. ¶ 34. On May 7, 2019, Broadridge's Vice President of Human Resources notified a Vice President and Senior Counsel at Broadridge of the looming restructuring and of her intention to inform U.S.-based employees of their termination on May 16 and May 17 "with a 1 week non-working notice." Id. ¶ 36. Knous was one of the employees slated to be terminated. Id. ¶ 37. This process was characterized by the Human Resources Vice President as providing Knous with "non-working notice through 5/24," which was to be his termination date. Id. ¶ 40.

On May 17, 2019, Knous was told his position was being eliminated and that he was being terminated from his employment. Id. ¶¶ 43-45. Knous was also told that he would be paid through May 24, 2019. Id. ¶ 47. In that meeting, Knous was "instructed": (1) to return his company-issued cell phone, which he did; (2) to return his company-issued laptop, which he did; (3) to return his keycard badge used for building access, which he did; (4) that he would be permitted to pack up the personal contents of his desk, which he did; (5) to cease performing any further duties or work for Broadridge, which he did; and (6) to leave the premises, which he also did. Id. ¶¶ 5-12. In that same meeting, Knous was also told that Broadridge would continue his pay and benefits until the following Friday, May 24, 2019. Id. ¶ 49.

---

[2] The factual allegations that follow are drawn from the parties' combined statement of undisputed facts (Doc. No. 28).

During that same meeting, Knous was given a severance agreement titled "Broadridge Financial Solutions, Inc., Release and Restrictive Covenant Agreement," along with accompanying documents ("the Severance Agreement"), for his review and consideration. Id. ¶ 52.  The Severance Agreement stated—in bold-faced print—that Plaintiff's employment "will terminate on **May 24, 2019** (the 'Termination Date') and, as of that date, the [Plaintiff] will cease performing the [Plaintiff's] employment duties and responsibilities and reporting to work for the Company." Id. ¶ 53.  The termination date of May 24, 2019 was not contingent on Knous's signing the Severance Agreement.  Id. ¶ 54.  Nor was Knous's payment of wages and benefits through May 24, 2019 contingent on his signing the Severance Agreement.  Id. ¶ 56.

Broadridge did not pay Knous on May 17, 2019 for the wages or vacation time he had accrued as of that date.  Id. ¶ 18.  Knous filed this lawsuit on May 22, 2019.  Doc. No. 1-2.  On May 24, 2019, Broadridge paid Knous all wages and vacation pay due and owing him as of that date.  Id. ¶ 22.

II.     LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once a party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial."  Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  A court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

3

On a motion for summary judgment, courts are "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). At the same time, courts may not credit "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008). When cross-motions for summary judgment are presented, courts "must consider each motion separately" and draw all inferences against each moving party in turn. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

III.   DISCUSSION

The Massachusetts Wage Act, G.L. c. 149, § 148, provides that "any employee discharged from . . . employment shall be paid in full on the day of his discharge. . . . The word 'wages' shall include any holiday or vacation payments due an employee under an oral or written agreement." M.G.L. ch. 149 § 148. Knous contends that the undisputed facts establish that Broadridge "discharged" him within the meaning of the statute on May 17, 2019. Doc. No. 20 at 1. Broadridge counters that the discharge was on May 24, 2019, and that only the notice of termination occurred on May 17. Doc. No. 25 at 9-11.

In construing the meaning of a Massachusetts statute, the plain meaning of the statutory text generally controls. See Penobscot Nation v. Mills, 861 F.3d 324, 330 (1st Cir. 2017). In interpreting statutes, courts must "not depart from, or otherwise embellish, the language of a statute absent either undeniable textual ambiguity, or some other extraordinary consideration, such as the prospect of yielding a patently absurd result." United States v. Fernandez, 722 F.3d 1, 10 (1st Cir. 2013) (quoting Pritzker v. Yari, 42 F.3d 53, 67-68 (1st Cir. 1994)); Boivin v. Black, 225 F.3d 36, 41 (1st Cir. 2000) ("[T]he unambiguous text of a statute may yield if its application tends to

4

produce absurd results."); <u>Ciani v. MacGrath</u>, 114 N.E.3d 52, 57 (Mass. 2019) (Courts "will not adopt a literal construction of a statute if the consequences of doing so are 'absurd or unreasonable,' such that it could not be what the Legislature intended."). If the statute does not define a term, the court "can look to the dictionary for clarification of the plain meaning of the words selected by [the legislature]." <u>L.S. Starrett Co. v. F.E.R.C.</u>, 650 F.3d 19, 25 (1st Cir. 2011).

The Massachusetts Wage Act imposes a strict requirement on employers to pay, <u>on the day of discharge from employment</u>, all the wages then due and owing the discharged employee. M. G. L. ch. 149, § 148. The Wage Act does not define "discharge," <u>see</u> M. G. L. ch. 149, § 1, but in the employment context, the term is generally understood to mean "to remove or release (a person) from office or employment; to dismiss from a post, service, etc.," Oxford English Dictionary, 3d ed., 2013. The purpose of the Act is to ensure that employees receive prompt payment of wages, <u>Wiedmann v. The Bradford Grp., Inc.</u>, 831 N.E.2d 304, 308 (Mass. 2005), and to "prevent the unreasonable detention of wages" by employers, <u>Melia v. Zenhire, Inc.</u>, 967 N.E.2d 580, 587 (Mass. 2012).

Employers receive no offset for extra payments made after discharge. <u>Dixon v. City of Malden</u>, 984 N.E.2d 261, 265 (Mass. 2013) ("We conclude that the failure to pay unpaid wages, as defined by G. L. c. 149, § 148, cannot be mitigated by gratuitous, after-the-fact payments, and that employees who have not received payment for unused vacation time to which they are entitled may seek relief pursuant to G. L. c. 149, § 150."). In <u>Dixon</u>, the Supreme Judicial Court made certain applications of the Wage Act clear: the obligation to pay arises not when the employer makes the decision to discharge an employee, 984 N.E.2d at 262, nor when the employer tells the employee of the decision to discharge him or her, <u>id.</u>, but on "the day" of the discharge, <u>id.</u>

A. <u>Knous's motion for summary judgment</u>

The Court begins with Knous's motion for summary judgment. Drawing all reasonable inferences in Defendant's favor, as the Court must in reviewing Knous's motion, the Court determines that Knous was not discharged on May 17, 2019. While Broadridge had decided to terminate Knous before May 17 and had told him of the termination on May 17, and had also unequivocally instructed him on that day not to work any longer, Broadridge informed Knous—verbally and in writing—that he was terminated as of May 24, 2019, and maintained Knous on the payroll with benefits until that date. Drawing all reasonable inferences in Broadridge's favor, Knous was only informed of his discharge on May 17; he was not discharged until May 24, and the week between the date on which he was informed of his termination and his termination was a one-week paid period of employment without responsibilities preceding Knous's discharge. Therefore, Knous's motion for summary judgment (<u>Doc. No. 19</u>) is DENIED.

B. <u>Broadridge's cross-motion for summary judgment</u>

Drawing all reasonable inferences in Knous's favor, as the Court must in reviewing Broadridge's cross-motion for summary judgment, the Court concludes that Knous was notified of his discharge on May 17 and that he was instructed to no longer perform work for Broadridge as of that date. <u>Doc. No. 28</u> ¶¶ 5-11. But the undisputed facts go further. Knous concedes that Broadridge told him it would pay his wages and benefits until May 24, 2019. <u>Id.</u> ¶¶ 52-56. He also concedes that Broadridge had decided to tell him on May 16 or 17 that he would have "'non-working notice through 5/24' – his termination date." <u>Id.</u> ¶ 40. Even drawing all reasonable inferences in his favor, the record establishes that there were no conditions imposed on this pay and benefits—his receipt of them was not contingent on the severance agreement proposed by Broadridge. <u>Id.</u> ¶¶ 52-56. Accordingly, the Court finds no genuine dispute of material fact.

In these circumstances, the Court concludes that Knous's <u>notification</u> of his discharge preceded his <u>actual</u> discharge.  The fact that in internal documents Broadridge characterized the period between notification and actual discharge as a period of paid notice confirms this conclusion.  <u>Id.</u>  ¶¶ 17, 36.  There are no other relevant material facts.[3]  Thus, the facts here differ markedly from those in <u>Dixon</u>, where the City discharged the plaintiff but then "gratuitously" continued to pay him his weekly wages in an effort to settle his claims.  984 N.E.2d at  265.

In opposing this motion for summary judgment, Knous argues that the statutory language "discharge from employment" means that a discharge triggering the employer's obligation to pay all the amounts required under the statute occurs when the employee no longer performs work for the employer.  The Court rejects that overbroad and unsupported reading of the statute.  First, the word "employment" encompasses the entire employment relationship including all of its attributes, not merely the performance of "work" for the employer.  As the First Circuit observed in another context, "'[e]mployment' is defined as 'the state of being employed; employ; service.'  The definition of 'employ' is 'to hire or engage the services . . . provide employment for; <u>have or keep in one's service</u>.'"  <u>Ruksznis v. Argonaut Ins. Co.</u>, 774 F.3d 784, 788 (1st Cir. 2014) (internal citations omitted) (emphasis added).  Knous was in Broadridge's employment until May 24th though he was assigned no work after May 17th.

---

[3] In the Joint Statement of Facts, citing his response to a request for admission from Defendant, Knous asserts he was told on May 17th that he was "being let go immediately," <u>Doc. No. 28</u> ¶ 44, although his affidavit filed with his summary judgment motion says only that he was told on May 17th that "he was being terminated," <u>Doc. No. 21-1</u> ¶ 3.  In any event, even accepting for summary judgment the statement made in the request for admission, that statement does not create a genuine issue of material fact as to when Knous's "discharge from employment" occurred in light of the undisputed facts discussed in the text.  Thus, the record supports only the conclusion that discharge occurred on May 24th.

Second, this ambiguous and sweeping reading of the statute would reach circumstances well outside the statute's focus—such as workers who are kept on the payroll but are told not to work for an indefinite period of time due to general lockdown or a lack of business arising from coronavirus—and would unmoor the statute from its purpose of ensuring that employers pay employees all that is due and owing them on day the employment relationship has ended.

The Court's the application of the statute also conforms to the principle of statutory construction that statutes be construed to avoid absurd results, for it permits employers to provide employees with notice of their discharge and to take steps—and, concomitantly, a reasonable amount of time—to unwind the employment relationship, e.g., to ensure the return of the employer's devices and to halt continued access to the employer's offices and information (including confidential business information), while actually discharging the employee at a later date. Put another way, the actual "discharge from employment" occurs upon the severance of the employment relationship which, in this case, occurred on May 24th because at that point all of Knous's obligations to perform as part of the employment relationship had ceased, his state of being in the employment of Broadridge terminated, and all of Broadridge's obligations to perform (including to compensate Knous[4]) as part of the employment relationship ended.

Therefore, Broadridge's cross-motion for summary judgment (Doc. No. 22) is ALLOWED.

---

[4] The Court is here referring to the ordinary obligation to pay Knous his salary, not the obligation to pay all wages and/or all accrued vacation time due under the statute at issue in this case.

IV.     <u>CONCLUSION</u>

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment (<u>Doc. No. 19</u>) and ALLOWS Defendant's cross-motion for summary judgment (<u>Doc. No. 22</u>). The Clerk shall enter judgment and close this case.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge